IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MARISA BROWN,                      )
                                   )
            Plaintiff,             )
                                   )
v.                                 )   Case No. CIV-08-038-KEW
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social             )
Security Administration,           )
                                   )
            Defendant.             )

**OPINION AND ORDER**

Plaintiff Marisa Brown (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 27, 1968 and was 39 years old at the time of the ALJ's decision. She completed her high school education and obtained an associate's degree in liberal arts. Claimant has engaged in past relevant work as a cashier, data processor, waitress, money counter, and hostess. Claimant alleges

an inability to work beginning January 31, 1996 due to limitations imposed by the lingering effects of a severely fractured pelvis and left hand, dislocation and torn ligaments in the right knee, subdural hematoma, circulatory problems in the left leg, and obesity.

## Procedural History

On February 24, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*). Claimant's application for benefits was denied initially and upon reconsideration. On July 18, 2007, Claimant appeared at a hearing before ALJ Edward L. Thompson in Ardmore, Oklahoma. By decision dated August 6, 2007, the ALJ found Claimant was not disabled at any time through the date of the decision. On November 30, 2007, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform her past relevant work as a cashier, data processor, waitress, money counter, and hostess.

4

**Errors Alleged for Review**

Claimant asserts the ALJ committed error requiring reversal in (1) failing to apply Soc. Sec. R. 83-20; (2) failing to discuss uncontroverted and/or significantly probative evidence which conflicted with the ALJ's findings of non-disability; and (3) engaging in a faulty RFC evaluation.

**Determination of Claimant's Onset Date**

Claimant first contends the ALJ should have determined her onset date and called upon the services of a medical consultant to do so. Claimant's injuries can be first traced to a motorcycle accident in 1985 in which Claimant was the passenger. She had a lengthy hospital stay which resulted in numerous surgeries. Among her injuries were a fracture pelvis, dislocated right knee with torn ligaments, a crushed left hand, broken right wrist and hand, and a subdural hematoma. (Tr. 370). However, the medical record does not contain reports of the treatment Claimant received or the status of her condition until October of 1995. (Tr. 203).

On January 17, 1996, Claimant was attended by Dr. Mary Lou Callerame. X-rays revealed postoperative changes including screw fixation of the left sacroiliac joint as well as a non-united portion of the left L5 spinous process. (Tr. 202, 209).

On June 18, 2001, Claimant saw Dr. Marc Zimmerman for an

5

orthopedic consultation regarding her knees. Dr. Zimmerman diagnosed Claimant with probable internal derangement of the right knee. He recommended an arthroscopic evaluation as well as removal of the hardware in her right tibia. (Tr. 153-54).

On January 9, 2002, Claimant complained to Dr. Roh Ayanzen of headaches. An MRI revealed metallic substances in the left frontal area and a focal protuberance at the expected origin of the left posterior communicating artery which was likely an infundibulum but a small aneurysm was not excluded. (Tr. 206-07).

Beginning in November of 2002 and continuing through 2003, Claimant was treated for left leg swelling and circulation problems. She was prescribed thinning medication. (Tr. 281-90, 291-96).

On March 16, 2004, Claimant experienced muscle pain and lower back pain. Pelvic x-rays revealed mild degenerative changes, at least three threaded screws traversing the lower left sacroiliac joint, with distortion of the superior margin of the joint, suspected related to sequelae of prior trauma. (Tr. 303-04).

On March 24, 2004, Claimant was attended by Dr. Mandeep Powar. She reported worsening lower back pain aggravated by activity. Dr. Powar diagnosed Claimant with low back pain, degenerative disc disease, myofascial spasm, degenerative disease of the lumbosacral

6

spine, coagulopathy, and a history of DVT with preference for conservative treatment. (Tr. 242-43). Claimant developed bleeding from superficial varicose veins around her left ankle requiring removal with leg ultrasound testing indicating chronic flow abnormalities and changes bilaterally. (Tr. 245-46, 249).

On July 7, 2004, a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form was completed on Claimant by Patricia Stanton, a nurse practitioner. She concluded Claimant was restricted to occasional lifting and/or carrying of 20 pounds, frequent lifting and/or carrying of less than 10 pounds, standing and/or walking for less than 2 hours in an 8 hour workday, sitting for 2 hours at a time less than 6 hours per day, occasional climbing, balancing, stooping, kneeling, and crouching, never crawling, and limited exposure to heights, moving machinery, and temperature extremes. Ms. Stanton included a diagnosis of severe degenerative arthropathy of the lumbar spine, DVT, varicose veins, and small leg clots. (Tr. 269-70).

On July 10, 2004, Claimant was attended by neurologist M. A. Kazmi, complaining of unannounced headaches and cluster headaches in the back and side of her head. After examination, Dr. Kazmi diagnosed Claimant with chronic intractable lower back pain, pelvic pain and history of DVT, migraine headaches, bladder prolapse,

7

history of subdural hematoma, and history of DVT, miscarriage hypercoagulable state. (Tr. 364-65).

On August 16, 2004, Claimant was evaluated by Ms. Stanton who found Claimant to be unable to lift over 10 pounds, and occasionally lifting 20 pounds. She found Claimant's grip in her left hand to be weak, push/pull to be weak, fine manipulation to be poor. (Tr. 387).

On August 23, 2004, Dr. Kazmi completed a Medical Assessment of Ability to Do Work-Related Activities form on Claimant. He concluded Claimant was restricted to sitting 1 hour at a time and 3 hours per day, could not stand in one place due to DVT but could walk 1 hour at a time and each day with 2 hours total on her feet, lift up to 10 pounds frequently and 20 pounds occasionally, carry 5 pounds frequently and 10 pounds occasionally, engage in manipulative and foot control tasks, never squat or crawl but occasionally bend, climb, and reach, have mild restrictions on ascending unprotected heights, and have moderately severe pain from headaches, backaches, and her right knee. (Tr. 366-68).

On August 30, 2004, Ms. Stanton again evaluated Claimant and completed a Medical Assessment of Ability to Do Work-Related Activities form. She found Claimant could sit 1 hour at a time and 4 hours per day, stand 2 hours a day due to DVT, walk 1 hour at a

8

time and 4 hours per day, remain on her feet 2 hours at a time and 4 hours per day, lift and/or carry 5 to 10 pounds frequently and 20 pounds occasionally, not use her left hand for manipulative tasks or her left foot for foot controls, never squat or crawl but occasionally climb and reach and frequently bend, have mild to moderate restrictions in exposure to unprotected heights, temperature changes, automobiles, or moving machinery, and experience moderate variable pain and fatigue. (Tr. 384-86).

On February 21, 2006, Claimant was attended by Dr. William F. Binder, an orthopedic surgeon. He noted Claimant's history of problems stemming from the motorcycle accident. Dr. Binder noted Claimant limped on her right side but that her pelvis was stable and was not particularly sore. Her hip motion was satisfactory. Claimant's upper extremity showed good shoulder and elbow motion. Wrist flexion was 90 degrees on the right and dorsiflexion of 80 degrees. The left hand, noted as injured, flexion was 90 degrees with dorsiflexion of 70 degrees. He found Claimant to have "pretty good grip and good finger function." (Tr. 395).

X-rays of Claimant's knees and pelvis showed status post knee derangement, Pellegrini-Stieda calcification, evidence of medial collateral ligament distal repair, arthritic changes in the medial compartment with osteophytes, loose body versus old PCL avulsion

9

noted, and status post major trauma with fusion and apex dorsal angulation of carpometacarpal joints of the left hand. (Tr. 397).

On March 21, 2006, Claimant again saw Dr. Binder. She continued to report right knee pain. However, she put off further testing or treatment at that time. (Tr. 392-93).

In his decision, the ALJ concluded the Claimant suffered from the severe impairments of obesity and history of pelvic trauma. (Tr. 17). At step four of the sequential evaluation, the ALJ determined Claimant retained the RFC to perform her past relevant work as a cashier, data processor, waitress, money counter, and hostess through her date of last insured of December 31, 1999. (Tr. 21). The ALJ also found Claimant retained the RFC necessary to perform a full range of medium work. (Tr. 18). He concluded the medical opinions developed after the expiration of the date of last insured of December 31, 1999, though acknowledged in the decision, "are of very little value and are entitled to very little or no probative weight with regard to claimant's residual functional capacity through December 31, 1999, when her insured status expired." (Tr. 21).

Claimant first contends the ALJ should have engaged the services of a medical advisor in order to infer Claimant's onset date in accordance with Soc. Sec. R. 83-20 since little medical

evidence exists in the record before the date of last insured. Soc. Sec. R. 83-20 provides that the determination of the onset date depends, in part, upon whether the disability occurs from a traumatic or non-traumatic origin. In cases of traumatic origin, the onset date is typically the date of the injury if the individual is expected to die or be unable to engage in substantial gainful activity (or gainful activity) for 12 continuous months as a result of the injury. If the disability occurs from non-traumatic origin, the ALJ is to consider the onset date alleged by the individual, the work history, and the medical evidence. In the case of a disability with a non-traumatic origin, medical evidence is the "primary element" for determining the onset date. However, when the medical evidence is inadequate, the ALJ may infer the onset date. The ALJ first must employ a medical advisor.

In this case, the medical evidence from the date of the traumatic event sometime in 1985 until after the expiration of the date of last insured is scant, as recognized by the ALJ. (Tr. 19). The evidence he does rely upon for that period relates primarily to Claimant's experiences with successful childbirth - experiences which the ALJ finds indicative of "substantial gainful activity." A considerable amount of the medical record relates to the period after the expiration of the date of last insured.

In evaluating the medical evidence post expiration of the date of last insured, the ALJ rightly considered the progressive nature of Claimant's condition but concluded the medical evidence did not indicate severe pain or limitations. (Tr. 20). He then rejected the opinion evidence developed post expiration of the date of last insured because it encompassed the period after the DLI. (Tr. 21).

The necessity to enter into the analysis urged by Claimant, including the necessity to engage the services of a medical advisor, only arises if the medical evidence of onset is ambiguous. Blea v. Barnhart, 466 F.3d 903, 910 (10th Cir. 2006). The lack of contemporaneous medical documentation before the expiration of the date of last insured and the development of evidence after the expiration which indicates restrictions upon Claimant's ability to engage in work-related activities gives rise to a question as to whether Claimant was under a disability prior to the expiration of the date of last insured. As a result, this Court will remand this case to the ALJ to (1) ascertain whether the medical evidence, including the opinion evidence from medical professionals indicates a disability before the expiration of the DLI; and (2) for the purpose of engaging a medical advisor in order to ascertain Claimant's onset date and if it occurred prior to the expiration of the date of last insured.

**Failure to Discuss Probative Evidence and RFC**

Claimant also contends the ALJ failed to discuss all of the probative evidence of impairment prior to and after the date of last insured. Since the entirety of the medical record must be revisited in order to establish whether Claimant's post-expiration of DLI evidence of impairment establishes a disability prior to the DLI, the ALJ shall re-evaluate the entire medical record on remand and his RFC determination.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 31st day of March, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE